# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**LEAH MEYERS HEBERT**                                          **CIVIL ACTION NO.**

**VERSUS**                                                       **21-185-SDD-EWD**

**ANDREW M. SAUL, COMMISSIONER**
**OF SOCIAL SECURITY**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 9, 2022.


　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　**ERIN WILDER-DOOMES**
　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LEAH MEYERS HEBERT                                 CIVIL ACTION NO.

VERSUS                                             21-185-SDD-EWD

ANDREW M. SAUL, COMMISSIONER
OF SOCIAL SECURITY

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Leah Meyers Hebert ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI").[1] Plaintiff has filed a Memorandum in Support of Appeal,[2] the Commissioner has filed an Opposition Memorandum,[3] and Plaintiff has filed a Reply Memorandum.[4] As Plaintiff has failed to establish harm regarding the ALJ's failure to rule on her request to amend the onset date for her alleged disability and her argument that the Commissioner's decision was the result of improper delegation of authority is without merit, it is recommended that the Commissioner's decision be affirmed.

### I.    PROCEDURAL HISTORY

On or about December 12, 2018, Plaintiff filed an application for DIB, alleging disability beginning on November 26, 2018.[5] Plaintiff's DIB claim was initially denied on March 7, 2019[6]

---

[1] *See* AR pp. 215-216 (DIB Application), AR pp. 225-233 (SSI Application), and AR pp. 1-6 (Notice of Appeals Council Action). References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "AR p. [page number(s)]."

[2] R. Doc. 10.

[3] R. Doc. 12.

[4] R. Doc. 15.

[5] AR pp. 215-216. There is a conflict between the Disability Determination Explanation, which lists the date Plaintiff filed her initial claim for disability at 12/12/18 (AR p. 101) and the Application Summary for Disability Insurance Benefits, which lists the date of the initial claim as December 13, 2018 (AR p. 215). This discrepancy is irrelevant for purposes of the bases upon which Plaintiff appeals the Commissioner's decision.

[6] AR pp. 99, 101-117.

and denied on reconsideration on September 4, 2019.[7] Plaintiff timely requested a hearing before

an administrative law judge ("ALJ") on her DIB claim,[8] and a hearing was set for March 18, 2020.[9]

Thereafter, Plaintiff filed an application for SSI, again alleging disability beginning on November

26, 2018,[10] and she requested that her SSI claim be "processed immediately and elevated so that

it can be adjudicated along with [Plaintiff's DIB] claim at her hearing on March 18, 2020."[11]

A hearing on Plaintiff's DIB and SSI claims was held on March 18, 2020, at which

Plaintiff, who was represented by an attorney, testified.[12] Vocational Expert ("VE") Beth Drury

also testified.[13] Prior to the hearing, there was uncertainty about Plaintiff's date last insured

("DLI"). Upon realizing that the DLI was "remote," Plaintiff's counsel requested thirty days to

provide the ALJ additional psychiatric records (predating November 2017) because "DDS only

requested back to November of 2017."[14] The ALJ granted that request.[15] Following the hearing,

Plaintiff also filed a supplemental brief[16] at the suggestion of the ALJ.[17] On May 4, 2020, the ALJ

---

[7] AR pp. 118, 120-138, 154-157.
[8] AR pp. 158-173.
[9] AR pp. 184-202, 203-204.
[10] AR pp. 225-233.
[11] AR p. 224.
[12] AR pp. 10, 28-98. The record indicates that Plaintiff has been represented by Eva Conner and The Law Office of James Conner since October 18, 2019. AR pp. 28, 180-183. Plaintiff was previously represented by Scot Whitaker, a non-attorney disability representative, on her DIB claim from April 22, 2019 through October 2, 2019. AR pp. 151-152, 174.
[13] AR pp. 10, 28, 91-96. Ms. Drury's curriculum vitae is also in the record. AR. p. 338-339.
[14] AR pp. 32-34 ("—I mean if we could just have 30 days, I would like to try to get those records that might be missing because I think the reason that they're relevant to the DLI is we don't quite know what the DLI is, but like we said, it could be relatively far back. DDS treated it like a case with a DLI in the future so they didn't even request far enough back to potentially encompass that DLI … we didn't realize there was a remote DLI until just recently—"). *Id.* at AR p. 33.
[15] AR. p. 34 ("Post for 30 days for [Plaintiff's counsel] to produce additional psychiatric records."), p. 341 ("I am granting your request for an extension to submit additional evidence. You must submit any additional evidence by April 24, 2020.").
[16] AR pp. 342-343. Plaintiff's brief discusses the additional medical records furnished to the ALJ after the hearing and how these affect Plaintiff's claims. Additionally, Plaintiff moved to amend her disability onset date from December 31, 2016 to October 30, 2015 because that is "when [Plaintiff] began regular mental health treatment at RKM Primary," and [t]hose records show regular treatment through 2015, 2016, and 2017 without significant improvement." *Id*.
[17] AR pp. 97 ("ALJ: You may also consider submitting another brief once we can identify the DLI 'cause you may wanna address AOD. ATTY: Right, okay so I will do. What'll I'll do is I'll go ahead and get those additional medical records and then once those are in, I'll send you in a, a supplemental brief.").

issued a notice of unfavorable decision, finding Plaintiff had not been under a disability as defined

in the Social Security Act, from November 26, 2018 through the date of the decision.[18] Plaintiff

timely filed a counseled request for review by the Appeals Council.[19] On February 2, 2021, the

Appeal's Council denied review.[20]

On April 5, 2021, Plaintiff timely filed her Complaint in this Court.[21] Accordingly, Plaintiff

exhausted her administrative remedies before filing this action for judicial review and the Appeals

Council's decision is the Commissioner's final decision for purposes of judicial review.[22]

## II.    PLAINTIFF'S ALLEGATIONS OF ERROR

Plaintiff does not object to the ALJ's findings in the five-step disability analysis, so a

detailed recitation of those findings and the medical evidence is not necessary. Instead, Plaintiff

argues the following assignments of error: (1) "The ALJ failed to consider and explain his

consideration of Plaintiff's request for an amended disability onset date of October 30, 2015"; and

(2) "The Appointment of Andrew Saul as a single commissioner of SSA who was removable only

for cause and would serve a longer term than the president violates the separation of powers,

---

[18] AR pp. 7-21.
[19] AR pp. 212-214. Plaintiff's counsel filed two briefs to the Appeals Council—one dated May 21, 2020 and the other dated July 31, 202. *See* AR pp. 344-345, 346. In her first brief, Plaintiff argues that the ALJ erred (1) by failing to rule on Plaintiff's motion to amend the onset date; (2) by adjudicating an incorrect period of time—*i.e.*, deciding rather than dismissing Plaintiff's DIB claim with an alleged onset date of November 26, 2018 despite a December 31, 2016 date last insured—and focusing on the wrong time period—*i.e.*, medical records from 2019-2020 rather than 2015 and 2016; and (3) by improperly weighing medical opinions. AR pp. 344-345. In her second brief, Plaintiff "specifically object[ed] to the administrative adjudicative process in light of the recent decision by the Supreme Court of the United States in *Seila Law LLC v. CFPB*, 591 U.S. --- (Jun. 29, 2020)" and "demand[ed] a constitutionally and statutorily valid administrative process including a *de novo* hearing before an ALJ deriving his or her power from a properly appointed Commissioner." AR p. 346 (cleaned up).
[20] AR pp. 1-6.
[21] R. Doc. 1.
[22] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

rendering the decision in this case by an ALJ and Appeals Council who derived their authority

from Mr. Saul constitutionally defective."[23] Plaintiff argues that both errors require remand.

### III.   LAW AND ANALYSIS

**A.    To the Extent the ALJ Erred by Not Expressly Ruling on Plaintiff's Request to Amend Her Onset Date, Plaintiff Has Not Shown Harm**

Plaintiff argues that her case must be remanded because the ALJ failed to rule to her request

to amend her disability onset date from November 26, 2018 to October 30, 2015, and failed to

consider impairments and resulting limitations prior to November 2018.[24] Plaintiff contends that

the ALJ's failure "violated due process and resulted in an unadjudicated period of three years in

this case."[25] Plaintiff further contends that the ALJ "did not consider [Plaintiff's] impairments and

resulting limitations prior to November 2018."[26] According to Plaintiff, the ALJ's failure

significantly prejudiced her because she "will be permanently barred from receiving disability

benefits she earned through hard work."[27] To remedy the ALJ's failure, Plaintiff argues that her

case must be remanded for "consideration of [her] request for an amended onset date and for

consideration of the three years of medical evidence that remain unevaluated."[28]

In response, the Commissioner argues that "Plaintiff cannot show that she was harmed by

the ALJ's alleged inaction on this request because the issue of her eligibility for Title II benefits

prior to December 1, 2017 is *res judicata*," and her date last insured was December 31, 2016.[29]

Specifically, the Commissioner argues that Plaintiff cannot show that she became disabled on or

before the expiration of her date last insured "because her Title II benefits eligibility through the

---

[23] R. Doc. 10, pp. 1-2.

[24] R. Doc. 10, pp. 3-4.

[25] Although Plaintiff argues that a three-year period was unadjudicated, which is presumably the period from October 30, 2015 through the initially alleged onset date of November 26, 2018, the Plaintiff also suggests that the proper period to consider is October 30, 2015 through the date last insured of December 31, 2016. *See* R. Doc. 10, pp. 3-4.

[26] R. Doc. 10, p. 4.

[27] *Id.*

[28] *Id.*

[29] R. Doc. 12, p. 15.

4

expiration of her insured status is *res judicata*, and therefore outside the scope of the benefits application before this Court."[30] Further, the Commissioner disputes Plaintiff's claim that there are three "unadjudicated" years or three years of unevaluated medical evidence because Plaintiff had "two prior applications for Title II benefits that were denied on initial determinations on January 26, 2016, and December 1, 2017, and were not appealed further."[31] As those determinations were not appealed, they are administratively final and *res judicata* applies, unless a claimant requests reconsideration or the Commissioner revises the initial determination under 20 C.F.R. § 404.905, neither of which has happened here.[32] As such, the Commissioner argues that whether the amendment of alleged disability onset date requested by Plaintiff was granted or denied cannot affect her eligibility for Title II benefits through December 1, 2017, the date of her previous benefits denial.[33]

Plaintiff argues in her Reply that the ALJ "never made…a finding" that *res judicata* applied to Plaintiff's request, and the Commissioner cannot "cure the ALJ's errors by providing its own alternative defense for the ALJ's actions."[34] Plaintiff argues that her "December 2018 application was an implicit request for reopening in itself,"[35] and, perhaps somewhat inconsistently, that "had [she] (and her counsel) been aware of the actual date last insured, she may have taken various actions,"[36] implying that, had Plaintiff known the correct date last insured, she would have

---

[30] *Id*., p. 16.

[31] *Id*., p. 16, citing AR p. 121.

[32] *Id*. at pp. 16-17.

[33] *Id*. at pp. 17-18.

[34] R. Doc. 15, pp. 1-2.

[35] *Id*., citing (1) POMS DI 27501.005(B), which, according to Plaintiffs, "provid[es] that SSA should consider reopening where a claimant files a new claim and alleges onset of disability within the period adjudicated by the prior decision," and (2) 20 C.F.R. § 404.988(a), which permits a prior decision to be reopened within 12 months of the date of the prior decision "for any reason." POMS is the SSA's "handbook entitled Program Operations Manual Systems. Although the POMS may provide useful insights, it has no legal force and does not bind the SSA. *See Schweiker v. Hansen*, 450 U.S. 785, 789 (1981). *See also, Puente v. Astrue*, 738 F.Supp.2d 669, 688 & n. 3 (S.D. Tex. Sept. 22, 2008), citing *Schweiker*, 450 U.S. at 789 ("As a handbook representing internal policy, the POMS simply informs the courts of present operating procedures of SSA employees.").

[36] R. Doc. 15, p. 2.

explicitly requested to reopen the December 1, 2017 decision. Plaintiff argues the ALJ's failure to grant her implicit request to reopen the prior decision was not harmless because the Court should not speculate on the outcome of any actions she would have taken, nor can it be "determine[d] with any certainty that a request for reopening would have been denied."[37]

To the extent the ALJ committed error by failing to rule on Plaintiff's request for an amended onset date (or discuss same in his decision), that error was harmless and did not affect Plaintiff's substantial rights because the time period at issue was either subject to *res judicata* or did not have to be considered since it was after the date last insured. Because the outcome of Plaintiff's claim could not be affected by amendment of the onset date, any error by the ALJ in failing to expressly adjudicate Plaintiff's request was harmless, and remand is not warranted on this basis.[38]

---

[37] *Id.*, p. 2. This argument seems to focus more on the fact that the date last insured was originally uncertain/incorrect in the record than on whether the ALJ erred in not specifically addressing the request to amend the onset date and/or considering medical evidence before November 2018. It is undisputed that the ALJ allowed Plaintiff to submit additional evidence and briefing once the date last insured was determined to be December 31, 2016. AR. p. 34 ("Post for 30 days for [Plaintiff's counsel] to produce additional psychiatric records."), p. 341 ("I am granting your request for an extension to submit additional evidence. You must submit any additional evidence by April 24, 2020.") and AR pp. 97 ("ALJ: You may also consider submitting another brief once we can identify the DLI 'cause you may wanna address AOD. ATTY: Right, okay so I will do. What'll I'll do is I'll go ahead and get those additional medical records and then once those are in, I'll send you in a, a supplemental brief.").

[38] The Fifth Circuit has determined that district courts reviewing denials must apply a harmless error analysis. *Burgess v. Astrue*, No. 10-371, 2011 WL 1828377, at *22 (S.D. Tex. Apr. 21, 2011), citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) ("Having determined that the ALJ erred in failing to state any reason for her adverse determination at step 3, we must still determine whether this error was harmless.") (citation omitted). The *Audler* court further explained that "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.' *Id.* (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). An error is harmless if it does not "affect the substantial rights of a party," or when it "is inconceivable that the ALJ would have reached a different conclusion" absent the error. *Swindle v. Colvin*, No. 12-0323, 2013 WL 12106130, at *6 (S.D. Tex. Sept. 23, 2013), citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003), and *Bornette v. Barnhart*, 466 F.Supp.2d 811, 816 (E.D. Tex. 2006) ("Harmless error exits (sic) when it is inconceivable that a different administrative conclusion would have been reached absent the error."). Plaintiff bears the burden of establishing that an ALJ's error is harmful. *See Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error.") *See also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Shaw v. Kijakazi*, No. 21-252, 2022 WL 2679432, at *3 (N.D. Miss. July 11, 2022) ("And, Plaintiff bears the burden of showing harmful error.").

### 1.       The Time from October 30, 2015, Plaintiff's Requested Onset Date, through December 1, 2017 is Subject to *Res Judicata*

The Commissioner is correct that any error by the ALJ in failing to expressly rule on Plaintiff's request to amend her onset date to October 30, 2015 is harmless because the period from that date through Plaintiff's date last insured of December 31, 2016, was already adjudicated in the December 1, 2017 denial of Title II benefits.

Any claim by Plaintiff for benefits before December 1, 2017 is subject to *res judicata*, which neither party disputes applies in the Social Security context.[39] Here, Plaintiff had two prior DIB applications—one filed on September 3, 2015 with an initial determination issued on January 26, 2016, and the second filed on August 23, 2017 with an initial determination issued on December 1, 2017.[40] In the application that was denied by initial determination on December 1, 2017, Plaintiff alleged an onset date of August 8, 2013, and that she suffered from the following illnesses, injuries, or conditions: "broken L1 vertebrae, broken L2 vertebrae, 2 crushed disc [sic], dislocated shoulder never set right, unset bone in right foot, bipolar 1 with manic depression, high anxiety, ADD, OCD, [and] high blood pressure."[41] In her current application, Plaintiff alleges she suffers from nearly identical issues.[42] The denial of the prior application on December 1, 2017

---

[39] 20 C.F.R. § 404.957 (providing for dismissal of a request for a hearing before an ALJ because the "doctrine of res judicata applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decisions has become final by either administrative or judicial actions."). *See also Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991) (citing 20 C.F.R. § 404.957(c)(1) and finding that plaintiff's current application for disability benefits alleging ailments beginning in June 1980 were "subject to the doctrine of administrative *res judicata*" because "a previous administrative decision adjudicated [plaintiff's] benefit entitlements through April 27, 1983"); *Robertson v. Bowen*, 803 F.2d 808, 810 (5th Cir. 1986); *Brewer v. Kijakazi*, No. 20-3226, 2022 WL 3591072, at \*\*4-5 (E.D. La. July 7, 2022) (discussing *res judicata* in the administrative—and Social Security—context, and noting that "administrative *res judicata* precludes repeated reconsideration of decisions made by the Commissioner."). Here, Plaintiff's Reply contains a single reference to *res judicata*. *See* R. Doc. 15, p. 1 ("There is one significant problem with SSA's argument that *res judicata* applied to the time period at issue in this case – the ALJ never made such a finding.").
[40] AR p. 121.
[41] AR pp. 139-147. According to this determination, medical evidence from 2013-2017 was considered in reaching the determination that Plaintiff was "not disabled." *Id*.
[42] *See* AR pp. 101-117 (alleging the following illnesses, injuries, and conditions: "low vision, broken L1 & L2 vertebrae, 2 shattered disc [sic] in lower back, bipolar 1, manic depression, obsessive-compulsive disorder, attention-deficit disorder, and anxiety disorder); AR pp. 120-121 (same).

means it was determined that Plaintiff was not disabled from her alleged onset date there (August 8, 2013) through the date of decision (December 1, 2017). Because Plaintiff did not appeal the December 1, 2017 determination, it became a final decision under applicable regulations, and it remains final (and subject to *res judicata*) unless that determination is reopened, which has not occurred here.[43] Accordingly, it is subject to *res judicata*, such that Plaintiff would not be entitled to any benefits relating to a disability beginning on or before December 1, 2017. Any lack of an express decision regarding amendment of the onset date and/or failure to consider medical evidence before November 26, 2018 (the onset date used by the ALJ) is, therefore, harmless.

> **2.    The Time Period from December 2, 2017 to November 26, 2018 is Not Properly Considered because it is Past Plaintiff's December 30, 2016 Date Last Insured**

The record also does not support Plaintiff's argument that she is harmed because there are any "unadjudicated" periods. The years spanning 2015 through December 1, 2017 were evaluated and adjudicated in Plaintiff's prior applications[44] and the period spanning November 26, 2018 through May 4, 2020 was evaluated and adjudicated in this application.[45] To the extent it appears there may be an unadjudicated period between December 1, 2017 and November 26, 2018 (there is not), such period does not warrant the relief Plaintiff seeks. Plaintiff must prove her disability on or before her date last insured, which in this case is December 31, 2016.[46] Thus, any records post-dating Plaintiff's December 31, 2016 date last insured—*e.g.*, any records dated after January 1, 2017—would not generally be relevant to the question of whether Plaintiff was disabled before

---

[43] *See* 20 C.F.R. § 404.987(a) ("Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lost your right to further review and that determination or decisions becomes final. However, a determination or decisions made in your case which is otherwise final and binding may be reopened and revised by us."); *see also* 20 C.F.R. § 404.988 (Conditions for reopening). *See* discussion at II(B), *infra*, regarding reopening.
[44] AR pp. 121; 139-147.
[45] AR pp. 10-21.
[46] *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990).

December 31, 2016.[47] Further, any failure of the ALJ to consider these records is harmless because

a claimant who becomes disabled after the expiration of her insured status is not entitled to Title

II benefits.[48]

> **B.    To the Extent the ALJ Erred by Not Granting Plaintiff's Implicit Request to Reopen the December 1, 2017 Initial Determination, Plaintiff Has Not Shown Harm**

Faced with the argument that any error in the ALJ's failure to rule on her request to amend

her onset date is harmless because the time period Plaintiff is arguing is subject to *res judicata*,

Plaintiff shifts gears and argues that the ALJ erred in denying her implicit request to reopen the

December 1, 2017 determination.[49] 20 C.F.R. § 404.987(b) allows a party to "ask that a final

---

[47] *See Jones v. Berryhill*, 2018 WL 4355210, at * 5 (W.D. Tex. Sept. 12, 2018), citing *Dominguez v. Astrue*, 286 Fed. Appx. 182, 185 (5th Cir. 2008); *Torres v. Shalala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995); *Fontenot v. U.S. Comm'r, Soc. Sec. Admin.*, 2017 WL 4084065, at *10 (W.D. La. Aug. 14, 2017) ("Evidence of medical conditions that became medically determinable after the date last insured must not be considered, and evidence establishing the degeneration of a condition after the expiration of a claimant's insured status is not relevant to the Commissioner's disability analysis."). To the extent the Fifth Circuit has held that a retrospective medical diagnosis may constitute relevant evidence of pre-expiration disability (*see Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997), Plaintiff has not pointed to specific information that would have been considered by the ALJ had the onset date been amended that is relevant to the question of whether she was disabled before December 31, 2016. *See Ivy*, 898 F.2d at 1048 ("Claimants bear the burden of establishing a disabling condition before the expiration of their insured status."); *Pope v. Comm'r of Soc. Sec.*, No. 21-55, 2021 WL 6618646, at *1, n. 3 ("A claimant is eligible for disability insurance benefits only if the onset of the qualifying medical impairment began on or before the date last insured. Plaintiff's date last insured is December 31, 2016, and Plaintiff bears the burden of establishing that she suffered from a disabling impairment on or before that date." (citations omitted)). *See also Russo v. Saul*, 805 Fed.Appx. 269, 272 (5th Cir. 2020) ("Because Russo bore the burden of proving she was disabled before the expiration of her insured status, evidence describing her condition after her date last insured is not relevant.").

[48] 42 U.S.C. § 416(i)(3); 42 U.S.C. § 423(c). *See also Ivy*, 898 F.2d at 1048 ("A claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured." (citations omitted)); *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) (same); *Luckey v. Astrue*, 458 Fed. Appx. 322, n. 1 (5th Cir. 2011) (same).

[49] Plaintiff's argument that this "error" affected her substantial interests (*i.e.*, was not harmless) because had she "been aware of the actual date last insured in this case," she could have taken "various actions to protect her benefits," including requesting a "reopening of SSA's December 1, 2017 decision" is belied by the record. Indeed, the record shows that Plaintiff's likely date last insured was discussed in the hearing before the ALJ and, in any event, Plaintiff was also aware of this date at the time she submitted her post-hearing brief. *See* AR pp. 32-33, 35-36 ("[L]ike we discussed; we got that DIB claimant that sounds like we probably got a DLI somewhere in the range of late 2016 …"); AR pp. 342-343 ("As we discussed at the hearing, the records support a finding of disabled back before [Plaintiff's] date last insured, which, to the best of our current knowledge, is 12/31/2016."). Despite this, Plaintiff did not specifically request a reopening of the prior determination. The DLI was established to be December 31, 2016 by the time Plaintiff filed her briefs with the Appeals Council. *See* AR p. 344 ("In discussion with the Field Office, we ascertained that Ms. Hebert's DLI was actually December 31, 2016 …"). At that time, Plaintiff also did not request reopening of the prior determination.

9

determination or decision to which you were a party be reopened."[50] It is undisputed that Plaintiff did not explicitly request the reopening of the December 1, 2017 decision.[51] Instead, Plaintiff argues that her current DIB application was an "implicit" request to reopen the 2017 decision. This expands (or perhaps, conflates) Plaintiff's assignment of error in her original brief that the ALJ erred by failing to expressly rule on her request to amend the onset date. Regardless, to the extent Plaintiff is arguing that the ALJ additionally erred in failing to grant her implicit request to reopen the 2017 decision, the argument is unpersuasive. First, the Court lacks subject matter jurisdiction to consider a decision not to reopen. Additionally, while § 404.987 and POMS DI 27501.0005 permit the reopening of prior determinations when certain conditions are met (namely, those in § 404.988), Plaintiff does not discuss those conditions, nor does she argue that they are met here. Because Plaintiff has not established that the conditions for reopening a prior determination are met, she has not established harm.

An ALJ has discretion to grant or deny a request to reopen, which decision is not reviewable in this Court.[52] Thus, this Court lacks subject matter jurisdiction to consider whether the ALJ erred in failing to reopen Plaintiff's December 1, 2017 determination based on her implicit

---

[50] *See* 20 C.F.R. § 404.987(b) ("Procedure for reopening and revision. We may reopen a final determination or decision on our own initiative, or you may ask that a final determination or decision to which you were a party be reopened. In either instance, if we reopen the determination, we may revise that determination or decision. The conditions under which we may reopen a previous determination or decision, either on our own initiative or at your request, are explained in § 404.988."). *See also* 20 C.F.R. § 404.988 (Conditions for reopening).

[51] *See* AR pp. 28-98 (ALJ hearing transcript) & pp. 342-343 (Plaintiff's counsel's post hearing brief). Indeed, nothing in Plaintiff's memoranda before the Court or the administrative record indicates that Plaintiff explicitly requested that the December 1, 2017 determination be reopened. Plaintiff, who was represented by counsel at the hearing and throughout the appeals process, did not orally request reopening of her December 1, 2017 determination, nor did she make that request in her post-hearing briefing. Moreover, Plaintiff's initial memorandum in support of appeal filed in this Court does not mention or otherwise reference any request to reopen the December 1, 2017 determination, nor does it cite to § 404.987, *et seq*. Plaintiff's treatment of reopening is contrary to her handling of her request for an amended onset date (*i.e.*, Plaintiff orally requested an amended onset date during the hearing and followed that request with an explicit, written motion to amend her onset date in her post-hearing brief).

[52] *Yarbrough on behalf of Yarbrough v. Colvin*, No. 16-230, 2017 WL 3928819, at *4-6 (M.D. La. Sept. 6, 2017), concluding that the court lacked subject matter jurisdiction over plaintiff's appeal challenging the ALJ's failure to reopen his prior claims, and citing *Twiggs v. Shalala*, No. 93-3472, 1994 WL 261815, at *2 (E.D. La. June 6, 1994) (quoting *Hensley v. Califano*, 601 F.2d 216 (5th Cir. 1979) for the proposition that refusals to reopen and determinations that a claim is res judicata are not reviewable).

request.

Even if the Court had subject matter jurisdiction to consider this argument, Plaintiff has

not established harm because she has not articulated a basis for reopening. Under § 404.988(a), a

determination may be revised "[w]ithin 12 months of the date of the notice of the initial

determination, for any reason." This section is inapplicable because Plaintiff did not request

reopening (explicitly or implicitly by filing the current DIB application) within one year of the

December 1, 2017 determination.[53] § 404.988(b) allows reopening "[w]ithin four years of the date

of notice of the initial determination *if we find good cause*, as defined in § 404.989, to reopen the

case." However, Plaintiff has not established good cause for reopening the December 1, 2017

application.[54] § 404.989(a) states: "We will find that there is good cause to reopen a determination

or decision if – (1) New and material evidence is furnished; (2) A clerical error in the computation

or recomputation of benefits was made; or (3) The evidence that was considered in making the

determination or decision clearly shows on its face that an error was made." Plaintiff does not

explain how she meets any of the standards for good cause under § 404.989(a), nor what

information would or should have been considered by the ALJ that may have affected the outcome

of the determination.

C.    **Plaintiff's Separation of Powers Arguments, and the Constitutionality of the
      SSA Commissioner Lack Merit**

Plaintiff's second argument relies heavily on the Supreme Court's holding in *Seila Law*

---

[53] *Compare* AR pp. 139-147 (**December 1, 2017** determination denying Plaintiff's DIB claims) and AR pp. 215-216 (**December 13, 2018** current DIB application). Thus, Plaintiff did not request—implicitly or otherwise—reopening of the prior determination within one year.

[54] To the extent Plaintiff's memoranda could be construed as an argument that the pre-November 2018 medical records provide good cause for reopening, the ALJ afforded Plaintiff an opportunity to provide additional medical records. *See* AR pp. 342-343 (Plaintiff's post-hearing brief regarding additional medical evidence, among other things), pp. 862-957 (medical evidence submitted after ALJ hearing, including (a) records from Nicole Dickens, MD, dated June 11, 2018 – July 16, 2018; (b) records from River Oaks Hospital, dated July 22, 2013 to September 6, 2013; and (c) records from RKM Primary Care, dated October 30, 2015 – September 8, 2017). Those records were received and indexed by the ALJ prior to issuing his determination. AR pp. 11, 26. Some of these records were already considered in Plaintiff's prior applications. *See* AR pp. 139-147 (discussing Plaintiff's treatment at River Oaks Hospital in 2013, as well as records from 2016.

*LLC v. CFPB*.[55] Plaintiff argues that she was "deprived…of a valid administrative adjudicatory process" because the "SSA's structure is unconstitutional as it violates separation of powers," which renders the "delegation of authority" to both the ALJ and the Appeals Council's "constitutionally defective."[56] Because the ALJ's determination and the Appeals' Council's decision suffer from this "constitutional taint," Plaintiff contends this matter should be "remanded for a *de novo* hearing before a new ALJ who does not suffer from the [same] constitutional taint."[57] In response, the Commissioner "agree[s] that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause"[58] but contends that this "conclusion does not support setting aside an unfavorable SSA disability benefits determination."[59] Relying on the Supreme Court's more recent opinion in *Collins v. Yellen*,[60] the Commissioner argues that despite the "unconstitutional statutory removal restriction," Plaintiff "must show that the restriction caused her harm," which Plaintiff cannot do here because (1) the ALJ's appointment was "ratified by the Acting Commissioner…whom the President could have removed…at will, at any time," and (2) Plaintiff "has not made (and cannot make)" the requisite showing that § 902(a)(3)'s removal restriction

---

[55] ---U.S.---, 140 S.Ct. 2183 (2020) (holding that the CFPB leadership by a single individual, whose term does not overlap with the President's, removable only for inefficiency, neglect, or malfeasance (*i.e.*, for cause) violates separation of powers and is unconstitutional).

[56] R. Doc. 10, pp. 5-7. Plaintiff notes that the Commissioner is the "singular head of the [SSA], serves for six years, and cannot be removed by the President except for cause ('neglect of duty or malfeasance in office')." *Id*., citing 42 U.S.C. § 902(a)(3).

[57] *Id*. at p. 7.

[58] R. Doc. 12, p.4, citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021).

[59] R. Doc. 12, p. 4.

[60] ---U.S.---, 141 S.Ct. 1761, 1787-89 (2021) (holding that Housing and Economic Recovery Act's ("HERA") for-cause removal restriction, for a single Director of the Federal Housing Finance Agency ("FHFA"), violated constitutional separation of powers, but actions taken by FHFA, when it was headed by a single Director who could be removed by the President only for cause, were not void, and explaining that plaintiffs may be entitled to "retrospective relief" if they can show that the unconstitutional removal restriction "inflict[ed] compensable harm" on plaintiffs).

"caused the denial of her benefits."[61]

Plaintiff's second assignment of error also fails for several reasons. First, Plaintiff does not dispute the Commissioner's contention that an Acting Director, who could have been terminated at will by the President, ratified the appointment of the ALJ who issued the decision denying Plaintiff's claims.[62] Plaintiff is incorrect that this argument is "entirely unresponsive" and has "nothing whatsoever to do with who appointed the ALJ or the Appeals Council judges in this case."[63] As noted by the Eastern District of Louisiana, "[c]ourts have refused plaintiff's request for a remand where the ALJ who denied the claim was appointed by an acting Commissioner not subject to the removal restriction."[64] There is no separation of powers issue here. Accordingly, there is no issue as to the constitutionality of the ALJ's appointment, and his decision in this case does not suffer from a "constitutional taint."

---

[61] *Id*. at pp. 3-15. The Commissioner argues that remand is not warranted on other grounds, including a "variety of other legal doctrine—harmless error, de facto officer, and the rule of necessity, and broad prudential considerations." *Id*. at pp. 4-5, 12-15.

[62] R. Doc. 12, p. 4.

[63] R. Doc. 15, pp. 9-10. Plaintiff further argues that "the adjudicators here had no constitutionally valid delegation of authority under which to adjudicate and then decide [Plaintiff's] case." *Id*. at p. 10.

[64] *Hughes v. Kijakazi*, No. 20-2374, 2022 WL 1256704, at *20 & n. 26 (E.D. La. Mar. 9, 2022), citing *Crossley v Kijakazi*, No. 20-2298, 2021 WL 6197783, at *6 (M.D. Pa. Dec. 31, 2021) ("Courts have refused plaintiff's request for a remand where the ALJ who denied the claim was appointed by an acting Commissioner not subject to the removal restriction."). *See also Pamela Joyce B. v. Kijakazi*, No. 21-87, 2022 WL 3161941, at **8-9 (N.D. Tex. July 21, 2022) (rejecting the constitutional claim asserted in this case); *Helper v. Kijakazi*, No. 21-1130, 2022 WL 1568742, at *8 (W.D. Tenn. May 18, 2022) ("Further, it appears that Helper's case was adjudicated by an ALJ whose appointment was ratified by an Acting Commissioner, to whom the unconstitutional removal restriction presumptively does not apply."); *Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *4-5 (D.N.J. Jan. 6, 2022) ("Because an Acting Director could be removed at will, the [*Collins*] Court noted, any action taken by an Acting Director would not violate the constitution…Thus, there is not issue as to the constitutionally of the ALJ's appointment" because plaintiff did not contest defendant's argument that an "Acting Commissioner ratified the appointment of the ALJ in this matter, and the Acting Commissioner could have been terminated at will by the President."); *Campbell v. Comm'r of Soc. Sec. Admin.*, No. 20-2048, 2022 WL 34677, at *4 (D. Ariz. Jan. 4, 2022 ("Plaintiff does not allege that the ALJ presiding over Plaintiff's case was appointed during Saul's tenure or otherwise received her authority to adjudicate social security claims directly from him. Moreover, Plaintiff does not specify which social security rules, if any, were promulgated by Saul during his tenure and applied in Plaintiff's case. Therefore, the Court finds that Plaintiff has not stated a compensable harm tied to Saul's actions or his unconstitutional removal protections that would warrant a new hearing in this case."); *Standifird v. Kijakazi*, No. 20-1630, 2021 WL 5634177, at *4 (S.D. Cal. Dec. 1, 2021) ("Because an Acting Commissioner does not have the same removal restriction as the Commissioner and because ALJ Schum was properly appointed, Plaintiff's argument is not persuasive in this case.").

Second, to the extent Plaintiff is intends to assert a "constitutionally defective delegation of power" argument rather than an Appointments Clause challenge,[65] this argument can be disposed of quickly. As our sister court in the Northern District of Texas explained, citing the numerous times it has been rejected, Plaintiff's argument is "legally frivolous and provides no grounds for remand, as Plaintiff's counsel is by now well aware."[66]

Third, the Supreme Court made clear in *Collins* that "an unconstitutional removal provision does not invalidate every decision of the agency."[67] "An administrative officer properly appointed does not create a 'reason to regard any of the actions taken by [that agency]…as void."[68] "To prove the agency action is invalid, Plaintiff must show that the provision itself 'inflicted compensable harm.'"[69] Here, Plaintiff argues that no showing of "cause" is required because the ALJ and Appeals Council "exercise[ed] power that they did not lawfully possess as a result of Mr. Saul's illicit delegation of power to them."[70] However, hedging her bets, Plaintiff next argues that if a showing of cause is required, there is a "direct causal nexus between the unconstitutional provision

---

[65] R. Doc. 15, pp. 9-10 (arguing (1) that Plaintiff "had her constitutional rights violated because several government actors, the ALJ and especially the Appeals Council judges, exercised power that they did not lawfully possess due to a constitutionally defective delegation of power," which has "nothing to with whether those adjudicators had been properly appointed three years ago," and (2) that "Plaintiff's point is that the adjudicators here had no constitutionally valid delegation of authority under which to adjudicate and then decide this case.").

[66] *Pamela Joyce B.*, 2022 WL 3161941, at *9 ("Plaintiff's counsel, as well as others, brought this removal clause argument in many other district courts, both in the Fifth Circuit and across the country. As of yet, no court has found merit in this argument to justify remand. *See Hughes v. Kijakazi*, Civ. Action No. 20-2374, 2022 WL 1256704 (E.D. La. March 9, 2022); *see also* [Civ. Action No. 21-087 (N.D. Tex.), at] Dkt. No. 21 at 22, n. 5 (providing citation to nearly 30 cases, including cases which Plaintiff's counsel argued on the same legally frivolous grounds)."). Notably, one of Plaintiff's attorneys in this case also represented the plaintiff in the *Pamela Joyce B.* case.

[67] *Pamela Joyce B.*, 2022 WL 3161941, at *9, citing *Collins*, 141 S.Ct. at 1787-89.

[68] *Id.*, quoting *Collins*, 141 S.Ct. at 1787.

[69] *Id.*, quoting *Hughes*, 2022 WL 1256704, at *20 (citing *Collins*, 141 S.Ct. at 1789). Indeed, "[a]pplying *Collins*, district courts in this circuit and across the country have held that plaintiffs raising the same constitution challenge to the prior [SSA] Commissioner's final decisions must establish a link between the adverse action and the unconstitutional tenure-protection provision to warrant relief on this basis." *Garza v. Kijakazi*, No. 21-826, 2022 WL 2759849, at *10 (N.D. Tex. June 21, 2022) (internal quotations and citations omitted) (collecting cases). District courts in other circuits have reached the same conclusion. *See, e.g.*, *Andino v. Kijakazi*, No. 21-2852, 2022 WL 1135010 (E.D Pa. Apr. 18, 2022) ("Citing *Collins*, courts in this Circuit which have considered arguments such as the one raised by Andino have agreed that *Seila Law* does not compel the vacating of a disability by the Social Security Commissioner where the plaintiff cannot show a nexus between his or her harm and the unconstitutional removal provision…Many other courts have reached the same conclusion," and collecting cases).

[70] R. Doc. 15, pp. 11-16 (cleaned up).

at issue here and the injuries suffered by [Plaintiff] with respect to the Appeals Council's actions" because "the delegation of authority from Mr. Saul, which he was able to illicitly delegate only because of the unconstitutional removal provision, and which the Appeals Council judges relied upon to adjudicate and decide [Plaintiff's] appeal, was constitutionally unsound."[71] Going further, Plaintiff states, "It is impossible to have a more direct 'but for' proof of causation than this."[72]

Despite the certitude with which Plaintiff advances her argument, it is not persuasive because it is an extension of her improper delegation argument, which is meritless. Regardless, Plaintiff's generalized, conclusory, and/or vague statements that she was harmed because the prior SSA Commissioner "undermined and politicized" Social Security disability benefits, "infringed upon the constitutional due process rights of disability benefits applicants like [her]," and deprived her of a "constitutionally valid adjudication process" from the ALJ and Appeals Council are not sufficient to establish the requisite nexus between the adverse action—here, the denial of Plaintiff's claims—and the unconstitutional removal provision."[73] Beyond these arguments, Plaintiff has not otherwise shown that the unconstitutional removal provision "inflicted

---

[71] R. Doc. 15, pp. 13-16 (cleaned up).
[72] *Id.* at p. 13.
[73] *See Garza*, 2022 WL 2759849, at *10 ("A growing number of courts have found this type of general argument insufficient to establish the necessary link between the adverse action and the unconstitutional provision. *See, e.g., Hughes*, 2022 WL 1256704, at *21 ('[T]he court here finds that a vague reference to regulations issued by a commissioner subject to an unconstitutional removal provision is not enough to require remand.'); *Cooley*, 2022 WL 1043693, at *7 ('This Court finds no nexus between Section 902(a)(3) and Plaintiff's alleged harm and finds that Plaintiff cannot receive an SSA rehearing on his benefits claim.'); *Sarah H. v. Comm'r of Soc. Sec.*, No. 3:21-CV-05149-JRC, 2021 WL 5770269, at *5 (W.D. Wash. Dec. 6, 2021) (claimant failed to show compensable harm under *Collins* when she failed to 'identif[y] any new regulations, agency policies or directives [the prior] Commissioner [ ] installed that may have affected her claims'); *Shaun A.*, 2021 WL 5446878, at *5 (claimant's 'reference to an unnamed White House official's justification for [the prior] Commissioner['s] removal[,]' including that he 'was removed from office in part because he had undermined, politicized, and reduced due process protections for benefits appeals hearings,' did not 'indicate that [she] was harmed') (citation and internal quotation marks omitted); *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ('[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground.')").

compensable harm" on her. Because Plaintiff has not and cannot make this showing, remand is not warranted under this assignment of error.[74]

## IV.    CONCLUSION AND RECOMMENDATION

Having found only harmless error in the ALJ's failure to address Plaintiff's request for an amended disability onset date and having found that Plaintiff has not established any connection between the denial of her DIB and SSI benefits and the unconstitutional removal provision regarding the Commissioner, **IT IS RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED**, and this action be **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on September 9, 2022.

*Erin Wilder-Doomes*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[74] Because the undersigned determined that Plaintiff failed to establish the necessary nexus between the adverse actions in her case and the unconstitutional removal provision, the Commissioner's alternative grounds opposing this assignment of error are not addressed.